ON Application por Rehearing.
Breaux, J.
The legal heirs presented anew the contention that the will was a mere repetition of words by the testatrix suggested by the notary, and not the expression of her intention.
The notary testified that before he received the will he had a conference with the testatrix with reference to this will. She had made a previous will and proposed to make some changes.
With that will before her, the notary and her friend named in both her wills as executor present, she indicated the changes she desired to make. They were noted and subsequently written down in accordance with the purpose manifested by her in the conference with the executor and the notary preparatory, prior to the receiving of the will.
To the same effect as the notary was the testimony of Mr. Woulfe, who was the friend of the testatrix, and the executor of her will.
Great stress is placed in the argument for'plaintiff that a certain asserted memorandum was not produced. Mr. Rouen, the notary, testified he went over the will of 1893 with the.testatrix, line by line, section by section; that the changes were made by her; he does not remember whether he made the correction in the will of 1893 on a separate paper.
In the course of a long and searching examination in which the questions as to the memorandum were repeated with great insistence and nicety of expression, the witness used the words, “ I think,” and at another time in the examination stated that he did not know whether there was any memorandum save that he followed the will of 1883; that he may have noted the changes, in memory following that will; that he may have noted the changes', on the copy of the will of 1893, or on a separate paper.
*1390 Testimony of this witness regarding a memorandum to which he says he attached no importance, which was destroyed, he states, as useless, does not, in our view, weaken his testimony that he did note the change in making the new will, nor do we think that it affected the testimony of Mr. Woulfe unfavorably that he could not produce the memorandum or copy of the will of 1893, if the memorandum was made from that copy, if either was left with him. Unless some reason exist to preserve such papers, they are apt to be cast aside. There is no basis for the conclusion that Woulfe had any motive to suppress the paper.
Again, the argument of the plaintiffs deals largely with the testimony of those present in the room when the will was made.
At best, the general tenor of this testimony is that they do not know of or did not see a will or memorandum. Witnesses called to give attention to the dictation and other acts necessary to the testamentary disposition might well be unable to answer positively as to a paper they had no reason to notice or remember.
The conclusion insisted upon by plaintiffs is that there was no memorandum whatever of the testatrix’ intended disposition preparatory to making her will. To accept this conclusion we must discard the positive testimony of Mr. Woulfe and of Mr. Rouen. On this branch of the investigation, whether the testatrix before she began the dictation of the will had fully considered and made known to the notary and Mr. Woulfe her intended disposition, the memorandum or copy of the will of 1893 is not at all essential to the effect of their testimony; that Mr. Woulfe can not put his hand on and produce the memorandum or copy of that will used when the will of 1894 was made; that neither he or the notary can remember or testify whether the memorandum was on the will of 1893 or on a separate paper, or testify to the color of the paper used; that the witnesses to the will itself give no supporting testimony to the memorandum or use of the copy (bub whose testimonyon the subject is only negative, not affirmative) ; that this copy was not used and the memorandum not made, are circumstances neither singly or collectively affording any basis for us to reject the testimony in this record that the testatrix had mentioned and made known to the notary and to Mr. Woulfe the dispositions her will contains.
Again, the will of 1894, in the leading features, is the counterpart of that of 1893, and in some respects similar to that of 1892. While *1391 she made bequests to relatives, tbe dominant purpose of tbe testatrix displayed in tbe present will as well as that in contest was to aid charitable institutions.
Tbe law excludes captation. 0. 0. 1492.
But on tbe question whether, the will' is tbe automatic utterance of dispositions procured by those about tbe testatrix, testimony of such promptings may perhaps be in place. It is true tbe argument suggests and tbe will shows that’she [made certain changes, but the modifications can not well be charged to. any influence or suggestion made by the notary or Mr. Woulfe. Her previous wills, in our appreciation, in themselves, furnish confirmation that the present will is the expression of her well formed intentions. With the intended bequests resolved upon as we think the testimony shows, is this will to be vitiated simply and only because of the assistance she asked and received from the notary in the dictation? She used his language in dictating her disposition. With the full understanding of the dispositions she desired to make, h,e penned the dispositions in suitable language, which she dictated word for word to him.
She was a woman of no education, utterly unwilling to trust to her limited power of expression and desirous to exercise the privilege of making a nuncupative will. If was but natural she should seek the notary’s assistance, and if there is no reason to suspect any prompting or influence of any kind exerted by him, the fact that he presented to her the mode of expressing the intended disposition; the dictation by her to him which followed would seem to add to, instead of detracting, irom the dictation. In our view the French authorities, rigid as they are with respect to dictation and other formalities of last will, extend no support to annulling a will because of the aid the testator may have received from the notary in the dictation, when there is no basis to question the dictation came from her intentions.
In our .own reports there are e.xtracts from leading French commentator that must be deemed to exclude an attack merely and only because of the mode of dictation pursued in the case.
The commentator dealing with the assistance the testator may receive from others in respect to his dispositions, before the dictation, adds of pertinence in this controversy: Bien n’epméehe non plus le notaire d’addresser cpielqu.es questions ou observations pour faire développer et rendre plus elaires les vólontés exprimées par le dis- *1392 posant; il pent m&me lui suggérer des mots exprimant mieux la pensée; mais il doit se garder de lui suggérer des idées nouvelles.
To the same effect is the other passage in that opinion, that is, in the Landry-Tomatis case, cited infra, from another French commentator.
We have considered all the decisions cited. The most pertinent authority is the case of Landry vs. Tomatis, 32 An. 113. The testatrix in that case was a French woman, whose ability to express herself in English was imperfect. Her will was in English, perfect in form and expression. She was assisted by her counsel. Relative to the strong implication from the decision that her counsel suggested the w’ords she dictated, the late Ohief Justice tersely said:
“The dictation of a will refers to substance, not style. Where it appears the real intent of the testator is expressed, the validity of the will is not affected by the fact that the language used was suggested by another, or that the words by the notary were not identically those of the testator,” and that exposition is supported by the Ohief Justice in half a page of authorities.
The decision sustained the will. We attach no weight here to the other decision, namely, the case of Godden vs. Executors of Burke, 35 An. 160. The will was sustained in that case. We do not deal with other decisions of more remote application. We think that authoiity and reason alike sustain the dictation of the will.
We have given this case on all the other points the most careful consideration. To reopen them would be to restate our original opinion, varied only by the form of expression. The point that the certificate of the notary does not show that she declared her inability to sign and that she did not make her mark in presence of the notary, we think, is answered by the certificate. There was a statement, as required, of her declaration. The authorities cited in this connection, beginning with that in the case of Shannon vs. Shannon, 16 An. 9, where there was no declaration from the testator,, do not support the averment here that the certificate was insufficient.
We have found no ground upon which to base a different conclusion from that heretofore expressed by us.
Rehearing refused.